UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| **AGXPLORE INTERNATIONAL, LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:12-cv-16 SNLJ |
| | ) | |
| **MARK SHELLEY,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Agxplore International, LLC filed this action against defendant Mark Shelley alleging that Shelley misused Agxplore's confidential information and trademarks to compete unfairly with Agxplore. Before the formal discovery period began, Agxplore deposed a non-party, Keith Snider. Although Mr. Snider is not mentioned in the complaint, Agxplore explains elsewhere that it has reason to believe that Mr. Snider assisted the defendant in unfairly competing with Agxplore and improperly soliciting Agxplore's customers and suppliers. During the deposition, which took place on July 9, 2012, Mr. Snider's attorney instructed Mr. Snider not to answer certain questions posed to him by Agxplore's counsel. On September 13, 2012, Agxplore filed the instant motion to compel Mr. Snider to appear for another deposition and answer the questions he refused to answer on July 9 (#30).

Mr. Snider filed a memorandum in opposition to Agxplore's motion to compel on September 24, 2012. On the same day, Mr. Snider filed a motion for a protective order pursuant to Rules of Civil Procedure 26(c), 30(c)(2), and 30(d)(3) precluding plaintiff from taking any further deposition testimony of Mr. Snider (#39).

Mr. Snider refused to answer 19 questions, all pertaining to his sole proprietorship (the "DBA"), which employed the defendant, and Mr. Snider's LLC, in which defendant is a partner. The information sought by those questions was as follows:[1]

1. The names and place of registration of the LLC and the DBA

2. Basic information about Mr. Snider's companies' suppliers

3. The identity of the DBA and LLC's customers

4. Identity of banks used by DBA and LLC

5. Sales information for specific customer(s)

6. Locations where LLC does business

7. LLC operations information

8. Products labeling

9. Financing arrangements

Mr. Snider refused to answer those questions on advice of counsel, apparently because he believed that the answers to those questions would reveal confidential, proprietary, and competitive commercial information. Mr. Snider's company is a direct competitor of plaintiff, and two of plaintiff's representatives were present at Mr. Snider's deposition.

Plaintiff Agxplore contends that Mr. Snider's counsel was wrong to instruct his client not to answer the 19 questions. Even if the questions called for confidential, proprietary, and competitive commercial information, plaintiff argues that Mr. Snider's counsel should have immediately moved this Court for a protective order pursuant to Federal Rule of Civil Procedure 30(d). Indeed, Rule 30(c)(2) states that, in the face of an objection during a deposition, "the

---

[1] These general topics were gleaned from the questions listed in plaintiff counsel's email to Mr. Snider's counsel dated August 24, 2012 at 11:03 a.m.

2

examination still proceeds; the testimony is taken subject to any objection." Further, a "person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2).

At the outset, the Court is unclear as to why the parties proceeded with a deposition of a non-party before discovery even began, particularly because the parties must have known that competitive information would be at issue and the proper subject of a protective order. And in fact, a protective order was entered in this matter on September 27, 2012 (#42). Indeed, Mr. Snider states that his counsel objected as he did because Mr. Snider's mobile phone records were then the subject of a subpoena and a motion to quash, which this Court later addressed on August 14, 2012 (#23).

Although Mr. Snider counsel was not entitled to object and instruct his client not to answer on the grounds of relevancy, Mr. Snider may have had justifiable concerns about protecting his company's competitive information. Plaintiff is correct that, under the Federal Rules of Civil Procedure, Mr. Snider should have moved immediately for a protective order upon refusing to answer deposition questions. On the other hand, plaintiff's counsel appeared to consent to Mr. Snider's counsel's terms of engagement: plaintiff's counsel indicated he recognized the "confidentiality issues" that were raised by Mr. Snider's counsel, acknowledged that there are a "whole host of issues," stated that he understood Mr. Snider's counsel's "position," and agreed to "just table that then for today." In subsequent written communications, plaintiff's counsel sought to re-depose Mr. Snider pursuant to a protective order (which would allow for Attorneys-Eyes-Only designations where appropriate), but Mr. Snider's counsel continued to object, apparently due to relevancy objections.

3

The information sought from Mr. Snider is, generally, relevant. "Relevant" information "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Armstrong v. Hussmann Corp.*, 163 F.R.D. 299, 302 (E.D. Mo. 1995) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). The subject of this litigation is (among other things) whether defendant Mark Shelley unfairly competed with plaintiff in light of Shelley's noncompete agreement with plaintiff. Mr. Snider admits that he operates a business that competes with plaintiff, and Mr. Snider admits that he employed and partnered with the defendant in this case, thus Mr. Snider's business dealings, although constituting potentially proprietary and/or confidential competitive information, are relevant. Mr. Snider tries to explain away the relevance of his business information based on the timing of defendant's employment and partnership, but plaintiff should not be required to take his word for it.

On the other hand, it appears that plaintiff has already obtained the information it originally sought through a subpoena of Mr. Snider's cell phone records: the identity of which, if any, of Agxplore's customers and suppliers with whom Mr. Snider had done business. The only Agxplore customer or supplier with whom Mr. Snider did business is, apparently, Melvin Weaver & Associates. As a result, it is unclear why Agxplore needs to further question Mr. Snider regarding the identity of his customers or suppliers. Until plaintiff can better explain its position on that matter, this Court will deny plaintiff the opportunity to further inquire as to those matters. Other questions, though, are more innocuous and can hardly be labeled proprietary. Finally, Agxplore's follow-up questions regarding Mr. Snider's business with Melvin Weaver & Associates may be appropriately asked pursuant to a protective order. The Court therefore rules as follows with respect to the specific questions Agxplore seeks to ask Mr. Snider:

4

1. Plaintiff may inquire as to the following matters, which have not been shown to be confidential or proprietary in nature:

- The names and place of registration of the LLC and the DBA
- Identity of banks used by DBA and LLC
- Products labeling
- Locations where LLC does business

2. Plaintiff may inquire as to the following matters pursuant to a protective order and an Attorneys' Eyes Only designation

- Sales to Melvin Weaver & Associates and other Weaver affiliates ("MRW") (amount, volume of sales, etc.)
- Does MRW make payment to Snider in Missouri
- The way the LLC operates in terms of receiving products from supplier and shipping to MRW, payment arrangements, methods, internal operations, management decisions, etc.

3. Plaintiff may not inquire as to the following matters unless plaintiff can better explain his need to do so given the results of plaintiff's subpoena of Mr. Snider's cell phone records:

- LLC and DBA suppliers
- LLC and DBA customers other than MRW
- How the LLC and DBA learned of and came to do business with those suppliers and customers (other than MRW)
- Financing arrangements for the LLC

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's Motion to Compel (#30) is **GRANTED** in part and **DENIED** in part, without prejudice**.**

**IT IS FURTHER ORDERED** that Keith Snider's Motion for Protective Order (#39) is **DENIED** to the extent the protective order sought is inconsistent with the content of this order.

Dated this   9th   day of January, 2013.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE