UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| **AGXPLORE INTERNATIONAL, LLC,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:12-cv-16 SNLJ |
| ) | |
| **MARK SHELLEY,** ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

Plaintiff Agxplore International, LLC filed this action against defendant Mark Shelley alleging that Shelley misused Agxplore's confidential information and trademarks to compete unfairly with Agxplore. Shelley counterclaimed, and, on August 16, 2012, Shelley amended his counterclaim to add a breach of contract count. Agxplore moved to dismiss that count on September 4, 2012 (#28). Shelley filed a memorandum in opposition and requested leave to amend his counterclaim in the event that the Court finds his original pleading to be inadequate.

**I.      Background**

For purposes of the motion to dismiss, the Court accepts as true Shelley's allegations. From September 2008 to December 2010, Shelley was employed as a salesperson for Agxplore. Shelley and Agxplore executed a Confidentiality and Non-Compete Agreement on September 19, 2008. Shelley's territory was the northeast United States, where his only customer was Melvin R. Weaver & Sons, a subsidiary of D&L Distribution ("Weaver"). Shelley sold a variety of Agxplore's agricultural micronutrient products to Weaver, including a product called Synurgize. Shelley sold over 20,000 gallons of Synurgize to Weaver each year. In 2009, Weaver expressed concern to Shelley that a competitor, Reichman Sales & Service, would start selling Agxplore in

the northeast, and Shelley passed those concerns on to Agxplore.  Then, in October 2010, Weaver and Shelley discovered that Reichman sold Synurgize in competition with Weaver.  Shelley alleges that he contacted Agxplore's sales manager, Tim Gutwein, who denied any knowledge of how Reichman had obtained the Synurgize.  Despite Gutwein's assurances, Reichman began advertising Synurgize in a farming publication at a price 45% lower than Weaver's.

In November 2010, Weaver approached Agxplore through Shelley about making a private label formulation of Synurgize that was designed to have an anti-foaming agent added and would be marketed as "Charge" by Weaver.  Agxplore provided the "Charge" product to Weaver for sale, but Gutwein later admitted to Shelley that Agxplore was actually providing the old Synurgize formula (without the anti-foaming agent added) under the new Charge label.

As a result of the undercutting of price by Reichman and the "Charge" mislabeling, Weaver immediately ceased doing business with Agxplore.  Shelley consequently lost his only customer and related sales commissions.  Shelley alleges (1) that Agxplore's actions constituted a breach of its employment contract with Shelley, (2) that Agxplore's actions created a working environment in which no reasonable person would have stayed, and (3) that the actions amounted to a constructive discharge of Shelley.  Finally, Shelley alleges that Agxplore's actions constituted a fraud on Shelley and Weaver and that, as a result, it would be contrary to public policy to enforce the covenant not to compete.

**II.    Legal Standard**

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint so as to eliminate those actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial

2

and trial activity.  *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)).  A complaint must be dismissed for failure to state a claim if it does not plead enough facts to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 560 (2007) (abrogating the traditional "no set of facts" standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  A petitioner need not provide specific facts to support his allegations, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam), but "must include sufficient factual information to provide the grounds on which the claim rests, and to raise a right to relief above a speculative level."  *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008), *cert. denied*, 129 S.Ct. 222 (2008) (quoting *Twombly*, 550 U.S. at 555-56 & n.3).

In ruling on a motion to dismiss, a court must view the allegations of the complaint in the light most favorable to the petitioner. *Scheuer v. Rhodes*, 416 U.S. 232 (1974); *Kottschade v. City of Rochester*, 319 F.3d 1038, 1040 (8th Cir. 2003).  Although a complaint challenged by a Rule 12(b)(6) motion does not need detailed factual allegations, a petitioner must still provide the grounds for relief, and neither "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" will suffice.  *Twombly*, 550 U.S. at 555 (internal citations omitted).  "To survive a motion to dismiss, a claim must be facially plausible, meaning that the factual content . . . allows the court to draw the reasonable inference that the respondent is liable for the misconduct alleged." *Cole v. Homier Dist. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)). When determining the facial plausibility of a claim, the Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Id*. (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)).  Finally, where a court can infer from those factual

allegations no more than a "mere possibility of misconduct," the complaint must be dismissed. *Id*. (quoting *Iqbal*, 129 S.Ct. at 1950).

**III.     Discussion**

To state a cause of action for breach of contract, plaintiff must allege: (1) a valid and enforceable contract between the plaintiff and defendant; (2) the rights of plaintiff and the obligations of defendant thereunder; (3) a violation thereof by defendant; and (4) damages resulting to plaintiff from the breach. *Teets v. American Family Mut. Ins. Co* ., 272 S.W.3d 455, 461 (Mo. Ct. App. 2008); *Trotter's Corp. v. Ringleader Restaurants, Inc.*, 929 S.W.2d 935, 941 (Mo. Ct. App. 1996). A party "fails to state a claim for breach of contract [if] it does not set out [the claimant's] rights or [the defendant's] obligations under the contract." 929 S.W.2d at 941.

Shelley's breach of contract claim against Agxplore fails as alleged. Although Shelley alleges the existence of the September 19, 2008 contract between himself and Agxplore, he does not set out the "rights of plaintiff and obligations of defendant thereunder," as required by Missouri law. *See Teets*, 272 S.W.3d at 461. Shelley suggests that because Agxplore "knows full well" its obligations and Shelley's rights under the contract, he is not required to allege that information in his complaint. Shelley further states that the title of the contract, "Confidentiality and Non-Compete Agreement," provides Agxplore with notice of the general nature of the rights and obligations arising under the agreement. However, the Eighth Circuit requires that Shelley allege "sufficient factual information to provide the grounds on which the claim rests," and he must "raise a right to relief above a speculative level." *Schaaf*, 517 F.3d at 549. Shelley's allegations provide plenty of facts about Agxplore's allegedly shady dealings with Weaver, but they do not connect the shady dealings to a breach of Agxplore's contract with Shelley.

4

Shelley requests that he be permitted to amend his counterclaim.  Federal Rule of Civil Procedure 15(a)(2) requires that leave to amend a pleading be freely given when justice requires. "Leave to amend should be denied if the proposed amendment would be futile," however.  *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 871 (8th Cir. 2002).

Shelley's proposed amendment identifies the contract provision that Agxplore breached, namely that the contract "required Agxplore to support Shelley in his efforts as an Agxplore employee by making 'reasonable efforts to inform [Shelley] of the rules, standards, and procedures' that Agxplore purports to follow."  (#32-2, ¶ 40.)  The Agreement provision itself states that Shelley "understand[s] that the Company will make reasonable efforts to inform me of the rules, standards and procedures which are in effect from time to time and which apply to me."

Shelley's amendment further alleges that Agxplore violated its obligations when it "unfairly and unreasonably undermined Shelley's efforts to sell Agxplore products to Weaver," which Shelley states "amounted to a breach of Agxplore's duty to reasonably inform Shelley of changes to the 'rules, standards, and procedures' it purported to follow."

Agxplore contends that Shelley's amended claim still does not cite to a specific contractual provision that Agxplore allegedly breached.  Agxplore maintains that Shelley's allegation that the Agreement "required Agxplore to support Shelley in his efforts as an Agxplore employee by making 'reasonable efforts to inform [Shelley] of the rules, standards, and procedures' that Agxplore purports to follow" fails to provide Agxplore with any notice of the specific contractual obligation to Shelley.  First, Agxplore says that it is not clear where in the Agreement Agxplore is required to "support Shelley in his efforts."  Second, Agxplore argues that Shelley's language regarding "rules, standards, and procedures" is "not found anywhere in

5

the agreement at issue and similarly fails to give Agxplore any notice of its purported obligation."

The Court agrees that the Agreement does not appear to state that Agxplore is "required to support Shelley in his efforts" as salesperson. However, the Agreement does explicitly refer to the "rules, standards[,] and procedures which are in effect from time to time and which apply to [Shelley]." (Agreement ¶ 2.)

Shelley's claim is that (1) Shelley and Agxplore executed a Confidentiality and Non-Compete Agreement, (2) Agxplore thereby agreed to inform Shelley of the "rules, standards and procedures which are in effect from time to time and which apply to [Shelley]", and (3) Agxplore violated that provision when it engaged in the practices that resulted in the loss of Weaver's business.[1]

This Court must determine whether Shelley's claim is "facially plausible," which means that Shelley's factual allegations must allow the Court "to draw the reasonable inference that the respondent is liable for the misconduct alleged." *Cole*, 599 F.3d at 861 (quoting *Iqbal*, 129 S.Ct. at 1949). Much of Shelley's counterclaim appears to go to whether the contract is enforceable, not whether Agxplore breached the contract itself, e.g., Shelley alleges that "Agxplore's actions constitute a fraud on Shelley and his customer" and "[a]s a result, it would be contrary to public policy to enforce the covenant not to complete." Agxplore correctly observes that Shelley provides no specificity regarding exactly about which "rules, standards, and [/or] procedures" it

---

[1] Shelley supplemented his response memoranda by adding information about Agxplore's Consent Decree with the Environmental Protection Agency. (#33.) Agxplore agreed to pay a civil penalty of $237,573 based in part on its violation of a statute that makes it unlawful to sell a pesticide that is adulterated or misbranded. Shelley states that the Consent Decree "is consistent with the allegations in Counterclaim Count III." To the extent that Shelley contends that Agxplore paid the civil penalty because it allegedly mislabeled the "Charge" product, Shelley should say so in his counterclaim.

failed to inform Shelley, and the Court agrees that Shelley has not pleaded his breach of contract claim adequately.

Although Shelley's breach of contract claim fails as it is currently pleaded, the Court will provide Shelley with the opportunity to amend his counterclaim.  He must, however, provide further allegations than what he proposes in his September 14, 2012 amendment.  First, as noted above, he does not identify the rule, procedure, or standard that was not communicated to him by Agxplore.  Second, although Shelley states he was "constructive[ly] discharge[d]" and cites to "a working environment in which no reasonable person would have stayed," that allegation is oddly placed in his breach of contract claim, and he does not indicate whether he believes he has a legal cause of action for "constructive discharge."  Finally, he does not explain the connection between Agxplore's alleged failure to abide by its contract provision and what he calls his "constructive discharge."

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff Agxplore's Motion to Dismiss Count III of Shelley's Counterclaim is granted in part and denied in part.

**IT IS FURTHER ORDERED** that defendant Shelley shall file an amended answer and counterclaim no later than January 19, 2013.

Dated this ___9th___ day of January, 2013.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE