UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| AGXPLORE INTERNATIONAL, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:12-cv-16 SNLJ |
| | ) | |
| MARK SHELLEY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

Plaintiff Agxplore International, LLC filed this action against defendant Mark Shelley alleging that Shelley misused Agxplore's confidential information and trademarks to compete unfairly with Agxplore. Shelley counterclaimed, and, on August 16, 2012, Shelley amended his counterclaim to add a breach of contract count. Agxplore moved to dismiss that count on September 4, 2012 (#28). Shelley was granted leave to amend his counterclaim on January 9, 2013 (#54). Shelley filed his Second Amended Answer and Counterclaim on January 18, 2013 (#55). Agxplore filed a motion to strike Shelley's Second Amended Counterclaim's requests for damages and attorney's fees (#56). The motion has been fully briefed and is ripe for adjudication.

I.      **Factual Background**

Shelley alleges the following facts in his Counterclaim. From September 2008 to December 2010, Shelley was employed as a salesperson for Agxplore. Shelley and Agxplore executed a Confidentiality and Non-Compete Agreement on September 19, 2008. Shelley's territory was the northeast United States, where his only customer was Melvin R. Weaver & Sons, a subsidiary of D&L Distribution ("Weaver"). Shelley sold a variety of Agxplore's

agricultural micronutrient products to Weaver, including a product called Synurgize. Shelley sold over 20,000 gallons of Synurgize to Weaver each year. In 2009, Weaver expressed concern to Shelley that a competitor, Reichman Sales & Service, would start selling Agxplore in the northeast, and Shelley passed those concerns on to Agxplore. Then, in October 2010, Weaver and Shelley discovered that Reichman sold Synurgize in competition with Weaver. Shelley alleges that he contacted Agxplore's sales manager, Tim Gutwein, who denied any knowledge of how Reichman had obtained the Synurgize. Despite Gutwein's assurances, Reichman began advertising Synurgize in a farming publication at a price 45% lower than Weaver's.

In November 2010, Weaver approached Agxplore through Shelley about making a private label formulation of Synurgize that was designed to have an anti-foaming agent added and would be marketed as "Charge" by Weaver. Agxplore provided the "Charge" product to Weaver for sale, but Gutwein later admitted to Shelley that Agxplore was actually providing the old Synurgize formula (without the anti-foaming agent added) under the new Charge label.

As a result of the undercutting of price by Reichman and the "Charge" mislabeling, Weaver immediately ceased doing business with Agxplore. Shelley consequently lost his only customer and related sales commissions. Shelley quit his job with Agxplore on December 11, 2010.

Agxplore's claims against Shelley stem primarily from Shelley's activities after he quit. Agxplore alleges that Shelley competed with Agxplore in violation of the September 19, 2008 noncompete agreement. Agxplore further alleges that Shelley induced Agxplore to release him from his allegedly improper conduct through a Mutual Release dated January 21, 2011. Agxplore also alleges that Shelley continues to compete with Agxplore unfairly, including by using Agxplore's trademarks.

## II. Legal Standard

Federal Rule of Civil Procedure 12(f) states that the Court "may strike from a pleading...any...immaterial...matter...on motion made by a party." Because they propose a drastic remedy, motions to strike are not favored and are infrequently granted. *Stanbury Law Firm, P.A. v. Internal Revenue Service*, 221 F.3d 1059, 1063 (8th Cir. 2000). Nonetheless, resolution of such a motion lies within the broad discretion of the Court. *Id.*

Matter in a complaint will not be stricken unless it clearly can have no possible bearing on the subject matter of the litigation. 2 James W. Moore, *et al.*, *Moore's Federal Practice* §12.37[3] (3d ed. 2009). If there is any doubt whether the matter may raise an issue, the motion should be denied. *Id.* If allegations are redundant or immaterial, they should be stricken only if prejudicial to the moving party. *Id.* A prayer for relief not available under the applicable law, or which asserts a damage claim in excess of the maximum recovery permitted by law, is properly subject to a motion to strike. *Id.*; *see, e.g.*, *Spinks v. City of St. Louis Water Div.*, 176 F.R.D. 572, 574 (E.D. Mo. 1997) (striking claim for punitive damages against municipality); *Brokke v. Stauffer Chem. Co.*, 703 F. Supp. 215, 222 (D. Conn. 1988) (striking claim for punitive damages under ERISA); *Chambers v. Weinberger*, 591 F. Supp. 1554, 1557-58 (N.D. Ga. 1984) (striking liquidated damages claim in ADEA action against the federal government).

## III. Discussion

Shelley brings three Counterclaims against Agxplore. First, Shelley seeks a declaration that he has not infringed any of the Agxplore trademarks. Second, he seeks a declaration that the January 21, 2011 release is valid and enforceable. Third, he seeks a declaration that his employment contract's covenant not to compete is unenforceable and thus Shelley has no liable for any breach. In his prayer for relief, Shelley also requests:

F. All compensatory damages recoverable for the counterclaims against Agxplore.

F[2]. All punitive or other damages recoverable for the counterclaims against Agxplore.

...

H.  Mr. Shelley be awarded his attorneys fees, costs, and expenses.

Am. Counterclaim ¶¶ F, F[2], and H.[1]

Agxplore contends that Shelley's requests for damages and attorneys' fees are improper and immaterial under Rule 12(f), and thus Agxplore moves to strike those requests.

### A. Request for Damages

Agxplore contends that because Shelley's counterclaims are all for declaratory judgments, damages are inappropriate. Notably, Shelley states in his memorandum in opposition (#75) to Agxplore's motion that he seeks "declaratory judgments and damages (costs and attorney's fees) resulting from Agxplore's actions." (#75 at 1.) Shelley therefore appears to concede that he does not seek damages apart from costs and attorneys' fees. Although the request for damages does appear immaterial in that respect, the request must be "prejudicial" to Agxplore to justify striking the request. *See Moore's Federal Practice* §12.37[3]. Agxplore contends that the request is prejudicial because it opens Agxplore up to discovery regarding its financial information. Although it is not clear that Shelley has requested such information from Agxplore, the Court agrees that Shelley has no basis on which to obtain financial information from Agxplore for purposes of litigating Shelley's claims against Agxplore. As a result, the Court will strike the damage requests.

---

[1]Shelley's Prayer for Relief contains a typographical error in that it repeats the letter "F" when the paragraph should have been labeled with a "G." The Court has labeled the second "F" as "F[2]."

4

### B. Request for Attorneys' Fees and Costs

Under the "American Rule," "each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242 (2010). Here, Shelley asserts that he may be entitled to attorneys' fees under, among other things, the Mutual Release signed by the parties and the Lanham Act.

The Mutual Release provides as follows: "In any proceeding arising out of this Mutual Release, the prevailing party shall be entitled to recover reasonable attorneys' fees and costs." Agxplore argues that "this dispute falls squarely outside the Mutual Release because Agxplore is enforcing rights separate from the Mutual Release – namely, Shelley's continued breach of contract following the Effective Date, as well as his fraud and misconduct in procuring such Mutual Release in the first place." (#76 at 5.)

Shelley's counterclaim concerning the validity of Mutual Release does appear to "aris[e] out of" that agreement. Further, Agxplore's statement that it seeks to enforce its rights regarding Shelley's alleged fraud and misconduct in procuring the Release at least arguably supports that this matter "aris[es] out of" the Release.

In addition, the Lanham Act (under which Agxplore originally filed this suit) provides that the court "in exceptional cases may award reasonable attorneys fees to the prevailing party." 15 U.S.C. § 1117(a). Exceptional circumstances may include exceptional case "one in which the plaintiff's action was groundless, unreasonable, vexatious, or pursued in bad faith." *Cmty. of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church*, 634 F.3d 1005, 1013 (8th Cir. 2011); *see also Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 123 (8th Cir. 1987). Shelley alleges that this is such a case and includes in his prayer for relief that he seeks a "declaration that this case is exceptional pursuant to 15 U.S.C. § 1117." (#55 at ¶ B.)

Agxplore vehemently denies that the case is exceptional, but Shelley is entitled to request attorneys' fees in his prayer for relief and be put to his proof.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff Agxplore's Motion to Strike (#56) is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that defendant Shelley's requests for compensatory and punitive damages are stricken, but his requests for costs and attorneys' fees shall stand.

Dated this __14th__ day of June, 2013.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE